1    John B. Sganga, Jr. (SBN 116211)
     john.sganga@knobbe.com
2    Lynda Zadra-Symes (SBN 156511)
     lynda.zadra-symes@knobbe.com
3    Lauren Keller Katzenellenbogen (SBN 223370)
     lauren.katzenellenbogen@knobbe.com
4    KNOBBE, MARTENS, OLSON & BEAR, LLP
     2040 Main Street
5    Fourteenth Floor
     Irvine, CA 92614
6    Phone: (949) 760-0404
     Facsimile: (949) 760-9502
7

8    Attorneys for Plaintiff
     MONSTER ENERGY COMPANY
9

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>WEST COAST CHILL, INC., a Nevada corporation, and THE JOSEPH COMPANY INTERNATIONAL, INC., a California corporation<br><br>    Defendants. | Case No.   **SACV14-00140 ABC (DFMx)**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, TRADE DRESS INFRINGEMENT, REQUEST FOR CANCELLATION OF TRADEMARK, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster Energy Company") hereby complains of Defendants West Coast Chill, Inc. and The Joseph Company International, Inc. (collectively "Defendants" or "West Coast Chill"), and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2)

-1-



trademark infringement under 15 U.S.C. § 1114, 3) federal dilution under 15 U.S.C. § 1125(c), 4) cancellation of U.S. Trademark Registration No. 4,318,564 under 15 U.S.C. § 1119, 5) California common-law unfair competition, and 6) California statutory unfair competition. The Court has original subject matter jurisdiction over the claims that relate to trademark infringement; false designation of origin; trademark dilution; and trade dress infringement pursuant to 15 U.S.C. §§ 1116 and 1121(a), and pursuant to 28 U.S.C. § 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the events complained of herein took place in this Judicial District.

## THE PARTIES

3. Monster Energy Company is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

4. Upon information and belief, Defendant West Coast Chill is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 1711 Langley Avenue, Irvine, California 92614. Defendant West Coast Chill is subject to the personal jurisdiction of this Court by virtue of its substantial contacts with California, including its participation in the acts and events occurring in this Judicial District described herein.

5.     Upon information and belief, Defendant The Joseph Company International, Inc. is a corporation organized and existing under the laws of the State of California, having a principal place of business at 1711 Langley Avenue, Irvine, California 92614. Defendant The Joseph Company International is subject to the personal jurisdiction of this Court by virtue of its substantial contacts with California, including its participation in the acts and events occurring in this Judicial District described herein.

6.     By committing acts of trade dress infringement, trademark infringement and unfair competition in this Judicial District, including but not limited to using infringing marks in connection with the sales and offers for sale of products to consumers and/or retailers in this Judicial District and selling into the stream of commerce knowing such products would be sold in California and this district, West Coast Chill's acts form a substantial part of the events or omissions giving rise to Monster Energy Company's claims.

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     Monster Energy Company's Trademarks and Trade Dress

7.     Monster Energy Company is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.

8.     In 2002, prior to Defendants' acts described herein, Monster Energy Company launched its MONSTER ENERGY® drink brand, bearing its now-famous ||| mark ("Claw Icon Mark") and well-known trade dress (hereinafter the "MONSTER Trade Dress"). A true and correct representation of an example of the MONSTER Trade Dress as used on Monster Energy Company's MONSTER ENERGY® drinks is shown below:



9.     The MONSTER Trade Dress, as shown above, includes the common elements of a black or black and gray background, a clawed letter "M", a bright contrasting accent color, the word "MONSTER" in a white, stylized font, and includes an overall aggressive, edgy theme.

10.    Monster Energy Company's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster™ Assault®; Monster™ Khaos®, Monster M-80®; Ubermonster®; Monster Mixxd®; Monster Energy® Import and Monster Energy® Import Light; Monster™ Dub Edition; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy® Ultra Red; Monster Cuba-Lima®; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes Monster Energy Company's Monster Rehab® Rojo Tea + Energy, Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength

-4-

1   Nitrous Technology®, which is a line of energy drinks with a blend of nitrous
2   oxide and carbon dioxide to create a smoother energy drink; and 🅼 ® Monster
3
4   Energy® which is a five ounce super concentrated energy drink, among others
5   (referred to collectively as "MONSTER™ line of energy drinks").

6       11.   Representative images showing some of the products in Monster
7   Energy Company's MONSTER family of products are shown below:

8


27      12.   As seen in these pictures, each of Monster Energy Company's
28   MONSTER products are sold using Monster Energy Company's prominently

displayed  ® trademark ("Claw Icon Mark") and the containers of Monster Energy Company's MONSTER™ line of energy drinks are prominently marked with Monster Energy Company's Claw Icon Mark. Many also bear Monster Energy Company's MONSTER Trade Dress. Since the initial launch of the MONSTER ENERGY® drink in 2002, Monster Energy Company has continuously used its famous Claw Icon Mark and MONSTER Trade Dress in connection with its MONSTER family of products described above and in extensive and widespread promotional, advertising and marketing activities relating to those products.

13.    Monster Energy Company is the owner of numerous trademark registrations incorporating its famous Claw Icon Mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not. | 05/07/2003 | 11/16/2004 |
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/27/2010 | 05/17/2011 |
|  | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/27/2010 | 11/08/2011 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
| MONSTER ENERGY | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |

14.     Attached hereto as Exhibits A1-A13 are true and correct copies of Monster Energy Company's trademark registrations identified in Paragraph 13 of this Complaint, which are incorporated herein by reference. Collectively, Monster Energy Company's registrations and trademarks referenced in Paragraphs 8-13 herein are referred to as the "Asserted Marks."

15.     Pursuant to 15 U.S.C. § 1065, Registrations Nos. 2,903,214; 3,134,841; 3,434,822; and 3,434,821 are now incontestable.

16.     As a result of Monster Energy Company's substantial and continuous use of the Asserted Marks, Monster Energy Company is also the owner of strong common-law rights in those Marks.

17.     Since Monster Energy Company's initial launch of its original MONSTER ENERGY® drinks in 2002, and prior to Defendants' acts described herein, Monster Energy Company has continuously used its Claw Icon Mark and the MONSTER Trade Dress in connection with its MONSTER™ line of energy drinks and in extensive and widespread promotional, advertising and marketing activities relating to those products.

18.     Monster Energy Company's Asserted Marks and the MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by Monster Energy Company in connection with its MONSTER™

line of energy drinks, and MONSTER apparel and accessories. Monster Energy Company has and continues to widely market and promote its Claw Icon Mark, and/or the MONSTER Trade Dress in the industry and to consumers by displaying the Claw Icon Mark and/or the MONSTER Trade Dress on more than 10 billion cans sold worldwide to date, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the Claw Icon Mark and/or the MONSTER Trade Dress, in magazines and other industry publications, on the MONSTER ENERGY® website and other Internet websites, attendance at trade shows, concert tours and live events, sponsorship of athletes, athletic teams, and athletic competitions around the world.

19.   Since 2002, Monster Energy Company has spent well over two billion dollars on promoting, advertising and marketing its MONSTER ENERGY® drinks bearing its Claw Icon Mark and MONSTER trade dress. Monster Energy Company's promotional efforts include – by way of example but not limitation – substantial print media, internet advertising, point of sale materials, sponsorship of athletes, sponsorship of musicians, sponsorship of live and televised events, contests, music concerts and attendance at trade shows. Monster Energy Company's Claw Icon Mark and MONSTER Trade Dress are prominently featured in Monster Energy Company's advertisements and promotions for its MONSTER™ line of energy drinks.

20.   Shown below are true and accurate representative pictures illustrating just a few examples of Monster Energy Company's MONSTER™ point of sale materials bearing Monster Energy Company's famous Claw Icon Mark and displaying Monster Energy Company's distinctive MONSTER Trade Dress:

1
2
3
4
5
6
7



8
9
10
11
12
13
14
15

 

16    21.    Monster Energy Company also sponsors over 200 extreme sports
17  athletes and athletic events in connection with its MONSTER™ brand drinks,
18  apparel, and accessories, bearing the Claw Icon Mark and/or the MONSTER
19  Trade Dress. Many of these athletes promote the MONSTER™ products
20  bearing the Claw Icon Mark and/or the MONSTER Trade Dress on their
21  clothing, uniform, and gear as shown, for example, below:

22
23



24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



22.     Monster Energy Company has been, and still is, the title sponsor for the MONSTER ENERGY® AMA Supercross Series and Supercross Championships, which includes 17 series races. Monster Energy Company also sponsors Youthstream's MX1 and MX2 FIM Motocross World Championships, and the MONSTER ENERGY® FIM Motocross of Nations.  Monster Energy Company also sponsors the Yamaha MONSTER ENERGY® MX Motocross Teams (as the title sponsor), including the MONSTER ENERGY® Yamaha Racing Team which competes internationally in both the MX1-GP and MX2-GP classes. As part of its extensive motocross sponsorships, Monster Energy Company's Claw Icon Mark, Asserted Marks, and MONSTER Trade Dress are prominently       promoted       on       www.supercrossonline.com, www.monsterenergycup.com, on the tracks and on the courses, on banners, on the athletes' bikes and apparel, and in connection with other promotional items.

23.     Monster Energy Company also sponsors or has sponsored numerous other sporting events, including the Billabong XXL Wave Awards, MotoGP's Grand Prix de France, and the X Games. At Monster Energy Company-sponsored events, Monster Energy Company's Claw Icon Mark, Asserted Marks, and MONSTER Trade Dress are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

24.     Further, Monster Energy Company uses its employees and outside companies to provide hospitality at these events. Monster Energy Company uses black trucks and other promotional vehicles that have been "wrapped" with the Claw Icon Mark and other MONSTER Marks and MONSTER Trade Dress at events where Monster Energy Company offers samples of its products to consumers. Monster Energy Company also uses "Monster Girls" at events to attract attention and add glamour and entertainment to the events and Monster

Ambassador Team members to give out free samples of MONSTER energy drinks and MONSTER merchandise.

25. In addition to the sporting events listed above, Monster Energy Company also sponsors other athletes and athletic teams who compete in a wide-variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and NASCAR racing. Many of the events that the Monster Energy Company-sponsored athletes and athletic teams compete in are broadcast nationally on television and all of them prominently display the Claw Icon Mark and MONSTER Trade Dress.

26. Monster Energy Company's MONSTER family of products has achieved substantial commercial success. Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide. From 2002 to the present, Monster Energy Company has sold more than 10 billion cans worldwide, all of which bear the Claw Icon Mark. Many also display the MONSTER Trade Dress. These sales have generated over $20 billion in total retail sales worldwide. Monster Energy Company's MONSTER™ brand has established itself as the best-selling energy drink brand in the U.S. by unit volume. As a result of Monster Energy Company's substantial use and promotion of its Asserted Marks and MONSTER Trade Dress in connection with its MONSTER™ family of products, Monster Energy Company's Asserted Marks and MONSTER Trade Dress have acquired great value as specific identifiers of Monster Energy Company's products and serve to identify and distinguish Monster Energy Company's MONSTER™ products from those of others. Customers in this judicial district and elsewhere readily recognize Monster Energy Company's Asserted Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster Energy Company's

MONSTER™ and MONSTER ENERGY® brand drinks, accessories, clothing products, sports bags and backpacks, and other products and promotional items. Monster Energy Company's Asserted Marks and MONSTER Trade Dress are intellectual property assets of enormous value as symbols of Monster Energy Company and its quality products, reputation, and goodwill.

**B.    West Coast Chill's Infringement of the Claw Icon Mark and/or MONSTER Trade Dress**

27.    On information and belief, Defendants West Coast Chill and The Joseph Company International (collectively "West Coast Chill") are engaged in the business of developing, marketing, selling, and distributing energy drinks and related goods, under the name West Coast Chill. Defendants also own and operate the website <www.westcoastchill.com>.

28.    Without permission or consent from Monster Energy Company, West Coast Chill has sold and is offering for sale and selling energy drinks and related goods bearing marks confusingly similar to one or more of Monster Energy Company's Asserted Marks and MONSTER Trade Dress (the "Accused Product"). An image of the Accused Product displayed on West Coast Chill's webpage is shown below:



29.    Specifically, West Coast Chill selected a logo displayed in a bright color contrasted against a black back ground. West Coast Chill also chose to display this logo in a jagged and aggressive looking font. The West Coast Chill

logo has three vertical prongs and appears to be an imitation of Monster Energy Company's Claw Icon. In addition, West Coast Chill imitates Monster's dark/light fade across the logo, even utilizing icy blue shades strikingly similar to those appearing on Monster Energy Company's Lo-Carb Monster Energy®, Monster Energy® Absolutely Zero, Monster Energy Extra Strength Nitrous Technology® Black Ice, and Monster Energy® Import Light can designs.



30.     Upon information and belief, prior to adopting its infringing can design, West Coast Chill used a can design that did not include a logo confusingly similar to Monster Energy Company's Claw Icon Mark. Upon information and belief, West Coast Chill willfully and deliberately changed its can design and logo in an attempt to falsely associate its Accused Product with Monster Energy Company or to otherwise trade upon Monster Energy Company's valuable reputation and customer goodwill in its MONSTER family of products. West Coast Chill's original can is shown below:



31.     On information and belief, West Coast Chill manufactures and distributes the Accused Product to retail outlets, including convenience stores.

32.    West Coast Chill's Accused Products are energy drinks, travel in the identical channels of trades, and are sold to identical consumers as Monster Energy Company's MONSTER line of energy drink products. Below is a photograph from the West Coast Chill Facebook page showing a cooler in a retail outlet displaying the Accused Product one shelf above Monster Energy Company's MONSTER™ and MONSTER ENERGY® products:



33.    West Coast Chill is clearly aware of Monster Energy Company and its valuable trademarks and trade dress. Upon information and belief, in addition to using a logo and can design that is confusingly similar to Monster Energy Company's Claw Icon Mark and MONSTER Trade Dress, West Coast Chill also closely mimics the style and distinctive elements of Monster Energy Company's asserted marks and MONSTER Trade Dress on its promotional and point of sale materials, product samplings, apparel and merchandise to promote its competing energy drink, as shown below:









34.   Upon information and belief, West Coast Chill has taken systematic steps in an attempt to falsely associate its Accused Products with

-17-

Monster Energy Company. As shown in the photographs above, West Coast Chill has attempted to capitalize on Monster Energy Company's valuable reputation and customer goodwill in its MONSTER family of products by mimicking Monster Energy Company's Supercross promotional materials, sponsorships, and event presence in a manner that is likely to cause consumers and potential customers to believe that West Coast Chill's Accused Products are associated with Monster Energy Company or Monster Energy Company's MONSTER family of products, when they are not.

35.    Without permission or consent from Monster Energy Company, West Coast Chill has infringed Monster Energy Company's Claw Icon Mark and MONSTER Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell the Accused Products unlawfully bearing marks that are confusingly similar to Monster Energy Company's Claw Icon Mark, as well as displaying Monster Energy Company's distinctive MONSTER Trade Dress.

36.    Upon information and belief, West Coast Chill's use of its confusingly similar logo and trade dress are designed and intended to cause confusion, mistake, or deception as to the source of West Coast Chill's Accused Product.

37.    By virtue of the acts complained of herein, West Coast Chill has created a likelihood of injury to Monster Energy Company's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster Energy Company's and West Coast Chill's goods, and has otherwise competed unfairly by unlawfully trading on Monster Energy Company's Asserted Marks and MONSTER Trade Dress.

38.    Upon information and belief, West Coast Chill's acts complained of herein are willful and deliberate.

39.     West Coast Chill's acts complained of herein have caused Monster Energy Company to suffer irreparable injury to its business. Monster Energy Company will suffer substantial loss of goodwill and reputation unless and until West Coast Chill is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

40.     Monster Energy Company hereby repeats, realleges, and incorporates by reference paragraphs 1-39 of this Complaint as though fully set forth herein.

41.     This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

42.     As a result of the widespread use and promotion of Monster Energy Company's Asserted Marks and MONSTER Trade Dress, the Asserted Marks and MONSTER Trade Dress have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the Asserted Marks and MONSTER Trade Dress with Monster Energy Company.

43.     West Coast Chill has infringed Monster Energy Company's Asserted Marks and MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster Energy Company's permission, trademarks and trade dress confusingly similar to Monster Energy Company's Asserted Marks and MONSTER Trade Dress, in connection with the advertisement, offering for sale, and/or sale of the Accused Product.

44.     West Coast Chill's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster Energy Company with West Coast Chill, and/or as to the origin, sponsorship, or

approval of West Coast Chill's goods or commercial activities, in violation of 15 U.S.C. § 1125(a).

45.    Monster Energy Company is informed and believes, and on that basis alleges, that West Coast Chill did so with the intent to trade upon Monster Energy Company's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that West Coast Chill's Accused Product is associated with, sponsored by or approved by Monster Energy Company, when it is not.

46.    Monster Energy Company is informed and believes, and on that basis alleges, that West Coast Chill had actual knowledge of Monster Energy Company's ownership and prior use of the Asserted Marks and MONSTER Trade Dress, and without the consent of Monster Energy Company, have willfully violated 15 U.S.C. § 1125(a).

47.    West Coast Chill's aforementioned acts have damaged Monster Energy Company in an amount to be determined at trial.

48.    By its actions, West Coast Chill has irreparably injured Monster Energy Company. Such irreparable injury will continue unless West Coast Chill is preliminarily and permanently enjoined by this Court from further violation of Monster Energy Company's rights, for which Monster Energy Company has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

49.    Monster Energy Company hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

50.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

51.     Monster Energy Company owns valid and enforceable registered trademarks for its Asserted Marks, including at least the registrations listed in Paragraph 14 above.

52.     West Coast Chill has used in commerce, without permission from Monster Energy Company, colorable imitations, and/or confusingly similar marks to Monster Energy Company's marks that are the subject of at least Monster Energy Company's U.S. Trademark Registration Nos. 2,903,214; 3,434,821; 3,434,822; and 3,134,841 in connection with the distributing, selling, offering for sale, advertising, and/or promoting of the Accused Products. Such use is likely to cause confusion or mistake, or to deceive.

53.     Upon information and belief, the activities of West Coast Chill complained of herein constitute willful and intentional infringements of Monster Energy Company's registered marks, and West Coast Chill did so with the intent to trade upon Monster Energy Company's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that West Coast Chill's Accused Products are associated with, sponsored by, originated from, or are approved by, Monster Energy Company, when they are not.

54.     Upon information and belief, West Coast Chill had actual knowledge of Monster Energy Company's ownership and prior use of Monster Energy Company's registered marks, and has willfully violated 15 U.S.C. § 1114.

55.     West Coast Chill's aforementioned acts have damaged Monster Energy Company in an amount to be determined at trial.

56.     West Coast Chill's aforementioned acts have irreparably injured Monster Energy Company. Such irreparable injury will continue unless West Coast Chill is preliminary and permanently enjoined by this Court from further

violation of Monster Energy Company's rights, for which Monster Energy Company has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Federal Dilution of the Asserted Marks Under 15 U.S.C. § 1125(c))

57.     Monster Energy Company hereby realleges Paragraphs 1-56, as if fully set forth herein.

58.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

59.     Products sold under Monster Energy Company's Claw Icon Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world. By virtue of the wide renown acquired by Monster Energy Company's Claw Icon Mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark, the Claw Icon Mark is famous and became so prior to West Coast Chill's acts complained of herein.

60.     West Coast Chill's unauthorized and commercial use of its logo mark in connection with the advertisement, offering for sale and sale of West Coast Chill's Accused Product has caused and is likely to continue to cause dilution of the distinctive quality of Monster Energy Company's famous Claw Icon Mark.

61.     West Coast Chill's acts are likely to tarnish, injure, or trade upon Monster Energy Company's business, reputation or goodwill, and to deprive Monster Energy Company of the ability to control the use of its Claw Icon Mark and quality of products associated herewith.

62.     Upon information and belief, West Coast Chill's dilution has been willful and deliberate.

63.     West Coast Chill's acts have damaged Monster Energy Company in an amount to be determined at trial.

64.    West Coast Chill's acts have irreparably injured Monster Energy Company. Such irreparable injury will continue until and unless West Coast Chill is preliminarily and permanently enjoined by this Court from further violation of Monster Energy Company's rights, for which Monster Energy Company has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

### (Cancellation of U.S. Trademark Registration under 15 U.S.C. § 1119)

65.    Monster Energy Company hereby repeats, realleges, and incorporates by reference paragraphs 1-64 of this Complaint as though fully set forth herein.

66.    This is a counterclaim for cancellation of U.S. Trademark Registration No. 4,318,564 under 15 U.S.C. § 1119.

67.    U.S. Trademark Registration No. 4,318,564 for  has a registration date of April 09, 2013 and a filing date of February 23, 2012.

68.    Since at least 2002, many years before the filing and registration dates of U.S. Trademark Registration No. 4,318,564, Monster Energy Company has continuously used and promoted its Asserted Marks in interstate commerce in connection with its products. By virtue of Monster Energy Company's continuous and substantial use and promotion of its Asserted Marks, the Claw Icon Mark has become a strong identifier of Monster Energy Company and its products, and distinguishes Monster Energy Company's products from those of others.   Monster Energy Company has built up significant and valuable goodwill in its Claw Icon Mark. Monster Energy Company also relies on its U.S. Trademark Registration Nos. 2,903,214, 3,434,821, 3,434,822, 3,963,668,

1  3,963,669, 4,011,301, 4,051,650, 4,332,062, 3,134,841, 3,908,600, 3,908,601,

2  3,914,828, and 3,923,683.

3      69.    The filing dates and registration dates of Monster Energy

4  Company's above-referenced registrations all predate the filing and registration

5  date of U.S. Trademark Registration No. 4,318,564.

6      70.    Upon information and belief, Defendant The Joseph Company

7  International filed the application that led to U.S. Trademark Registration No.

8  4,318,564 registration with full knowledge of Monster Energy Company's prior

9  rights in its Claw Icon Mark.

10      71.    Monster Energy Company is being damaged by Defendant The

11

12

13



14  Joseph Company International's '297 registration for the mark

15  which so resembles Monster Energy Company's Asserted Marks registered in the

16  United States Patent and Trademark Office, and in which Monster Energy

17  Company owns common law trademark rights, as to be likely, when used on or in

18  connection with the goods identified in the registration to cause confusion, or to

19  cause mistake or to deceive within the meaning of Section 2(d) of the Trademark

20  Act, 15 U.S.C. § 1052(d).

21      72.    In view of Monster Energy Company's prior rights in its Asserted

22  Marks, Defendant The Joseph Company International is not entitled to continued

23

24



25

26  registration of the      mark, and U.S. Registration No. 4,318,564

27  should be cancelled pursuant to 15 U.S.C. § 1119.

28

# FIFTH CLAIM FOR RELIEF

## (California Common-Law Unfair Competition)

73.     Monster Energy Company hereby repeats, realleges, and incorporates by reference paragraphs 1-72 of this Complaint as though fully set forth herein.

74.     This is a claim for unfair competition arising under California common law.

75.     West Coast Chill's acts complained of herein constitute trademark and trade dress infringement and unfair competition under California common law.

76.     By virtue of the acts complained of herein, West Coast Chill has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster Energy Company in violation of the common law of the state of California.

77.     West Coast Chill's aforementioned acts have damaged Monster Energy Company in an amount to be determined at trial.

78.     West Coast Chill has irreparably injured Monster Energy Company. Such irreparable injury will continue unless West Coast Chill is preliminarily and permanently enjoined by this Court from further violation of Monster Energy Company's rights, for which Monster Energy Company has no adequate remedy at law.

79.     West Coast Chill's willful acts of unfair competition under California common law constitute fraud, oppression and malice. Accordingly, Monster Energy Company is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

**SIXTH CLAIM FOR RELIEF**

**(California Statutory Unfair Competition)**

80.    Monster Energy Company hereby repeats, realleges, and incorporates by reference paragraphs 1-80 of this Complaint as though fully set forth herein.

81.    This is a claim for unfair competition, arising under California Business and Professions Code § 17200, *et seq.* and California common law.

82.    West Coast Chill's acts complained of herein, constitute unfair competition with Monster Energy Company under California Business and Professions Code § 17200, *et seq.* West Coast Chill's acts constitute unlawful, unfair, malicious or fraudulent business practices.

83.    By its actions, West Coast Chill has irreparably injured Monster Energy Company. Such irreparable injury will continue unless West Coast Chill is preliminarily and permanently enjoined by this Court from further violation of Monster Energy Company's rights, for which Monster Energy Company has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Monster Energy Company prays for judgment against West Coast Chill as follows:

A.    That the Court render a final judgment in favor of Monster Energy Company and against West Coast Chill on all claims for relief alleged herein;

B.    That the Court render a final judgment that West Coast Chill has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing Monster Energy Company's Asserted Marks and MONSTER Trade Dress and by using a false designation of origin, false description or false representation through the marketing, sale and promotion of West Coast Chill's Accused Product;

C.    That the Court render a final judgment that West Coast Chill has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster

Energy Company's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 2,903,214, 3,434,821, 3,434,822 and 3,134,841.

D.      That the Court render a final judgment that West Coast Chill has willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting Monster Energy Company's famous federally-registered Claw Icon Mark;

E.      That the Court render a final judgment that West Coast Chill has unfairly competed with Monster Energy Company in violation of California common law;

F.      That the Court render a final judgment that West Coast Chill has unfairly competed with Monster Energy Company in violation of California Business and Professions Code § 17200, *et seq.*;



G.      That the Court render a final judgment that the trademark and Trademark Registration No. 4,318,564 is invalid;

H.      That the Court direct the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 4,318,564;

I.      That West Coast Chill, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.      using the mark shown in U.S. Trademark Registration No. 4,318,564 and/or Monster Energy Company's Asserted Marks and/or MONSTER Trade Dress, in connection with West Coast Chill's goods, using the Asserted Marks and/or MONSTER Trade Dress in advertising or promoting West Coast Chill's goods, and/or using confusingly similar

variations of the Asserted Marks and/or MONSTER Trade Dress in any manner that is likely to create the impression that West Coast Chill's goods originate from Monster Energy Company, are endorsed by Monster Energy Company, or are connected in any way with Monster Energy Company;

ii.    manufacturing,    distributing,    shipping,    importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any products bearing the mark shown in U.S. Trademark Registration No. 4,318,564 and/or Monster Energy Company's Asserted Marks, MONSTER Trade Dress, and/or any confusingly similar marks;

iii.    otherwise infringing the Asserted Marks, MONSTER Trade Dress, or otherwise diluting Monster Energy Company's Claw Icon Mark;

iv.    falsely designating the origin of West Coast Chill's goods;

v.    unfairly competing with Monster Energy Company in any manner whatsoever; and

vi.    causing a likelihood of confusion or injury to Monster Energy Company's business reputation;

J.    That West Coast Chill be directed to file with this Court and serve on Monster Energy Company within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116.

K.    That West Coast Chill be required to account to Monster Energy Company for any and all profits derived by West Coast Chill and all damages sustained by Monster Energy Company by virtue of West Coast Chill's acts complained of herein;

-28-

L.    That West Coast Chill be ordered to pay over to Monster Energy Company all damages which Monster Energy Company has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

M.    That Monster Energy Company be awarded treble damages pursuant to 15 U.S.C. § 1117;

N.    That Monster Energy Company be awarded exemplary damages from West Coast Chill pursuant to Cal. Civ. Code. § 3294;

O.    That West Coast Chill's actions be deemed willful;

P.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster Energy Company pursuant to at least 15 U.S.C. § 1117;

Q.    That West Coast Chill be required to deliver and destroy all devices, literature, advertising, goods and other materials bearing the infringing trade dress and marks pursuant to 15 U.S.C. § 1118; and

R.    That Monster Energy Company be awarded such other and further relief as this Court may deem just.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: _1/31/14_    By: _Lynda J. Zadra-Symes_

Lynda J. Zadra-Symes
Lauren Keller Katzenellenbogen

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _1/31/14_        By: _____

Lynda J. Zadra-Symes
Lauren Keller Katzenellenbogen

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

17155024
013014

-30-

# EXHIBIT A1

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

United States Patent and Trademark Office

Corrected

Reg. No. 2,903,214

Registered Nov. 16, 2004

OG Date Dec. 18, 2007

## TRADEMARK
## PRINCIPAL REGISTER



HANSEN BEVERAGE COMPANY (DELA-WARE CORPORATION)
550 MONICA CIRCLE
SUITE 201
CORONA, CA 92880

FOR: DRINKS, NAMELY, CARBO-NATED SOFT DRINKS, CARBONATED DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, CARBONATED AND NON-CARBONATED ENERGY OR SPORTS DRINKS, FRUIT JUICE DRINKS HAVING A JUICE CONTENT OF 50% OR LESS BY VOLUME THAT ARE SHELF STABLE, AND WATER;*BUT EXCLUD-ING PERISHABLE BEVERAGE PRO-DUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT.*, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

SER. NO. 78-246,564, FILED 5-7-2003.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Dec. 18, 2007.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

EXHIBIT A1

# EXHIBIT A2

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51 and 52

**United States Patent and Trademark Office**

Reg. No. 3,434,821

Registered May 27, 2008

## TRADEMARK
### PRINCIPAL REGISTER



HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE
SUITE 201
CORONA, CA 92880

FOR: NUTRITIONAL SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

OWNER OF U.S. REG. NOS. 2,903,214 AND 3,134,841.

THE MARK CONSISTS OF THE LETTER "M" IN THE FORM OF A CLAW.

SER. NO. 77-274,643, FILED 9-7-2007.

MICHAEL WIENER, EXAMINING ATTORNEY

EXHIBIT A2

# EXHIBIT A3

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

## United States Patent and Trademark Office

Reg. No. 3,434,822

Registered May 27, 2008

## TRADEMARK
## PRINCIPAL REGISTER



HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE
SUITE 201
CORONA, CA 92880

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, ENERGY DRINKS, EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

OWNER OF U.S. REG. NOS. 2,903,214 AND 3,134,841.

THE MARK CONSISTS OF THE LETTER "M" IN THE FORM OF A CLAW.

SER. NO. 77-274,662, FILED 9-7-2007.

MICHAEL WIENER, EXAMINING ATTORNEY

EXHIBIT A3

# EXHIBIT A4

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,963,668**

**Registered May 17, 2011**

**Int. Cl.: 16**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: STICKERS; STICKER KITS COMPRISING STICKERS AND DECALS; DECALS; POSTERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 1-0-2004; IN COMMERCE 1-0-2004.

THE MARK CONSISTS OF A STYLIZED LETTER "M" IN THE FORM OF A CLAW.

SN 85-094,343, FILED 7-28-2010.

LEIGH LOWRY, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

EXHIBIT A4
- 34 -

# EXHIBIT A5

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,963,669**

**Registered May 17, 2011**

**Int. Cl.: 18**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: ALL PURPOSE SPORT BAGS; ALL-PURPOSE CARRYING BAGS; BACKPACKS; DUFFEL BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 5-24-2002; IN COMMERCE 6-30-2002.

THE MARK CONSISTS OF A STYLIZED LETTER "M" IN THE FORM OF A CLAW.

SN 85-094,364, FILED 7-28-2010.

LEIGH LOWRY, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

EXHIBIT A5

# EXHIBIT A6

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,011,301**

**Registered Aug. 16, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: SPORTS HELMETS; VIDEO RECORDINGS FEATURING SPORTS, EXTREME SPORTS, AND MOTOR SPORTS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-24-2002; IN COMMERCE 6-30-2002.

THE MARK CONSISTS OF A STYLIZED LETTER "M" IN THE FORM OF A CLAW.

SER. NO. 85-094,340, FILED 7-27-2010.

LEIGH LOWRY, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

EXHIBIT A6

- 36 -

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL
> TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
> DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
> reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

EXHIBIT A6

# EXHIBIT A7

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,051,650**

**Registered Nov. 8, 2011**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: CLOTHING, NAMELY, T-SHIRTS, HOODED SHIRTS AND HOODED SWEATSHIRTS, SWEAT SHIRTS, JACKETS, PANTS, BANDANAS, SWEAT BANDS AND GLOVES; HEADGEAR, NAMELY HATS AND BEANIES , IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5-24-2002; IN COMMERCE 6-30-2002.

THE MARK CONSISTS OF A STYLIZED LETTER M IN THE FORM OF A CLAW.

SER. NO. 85-094,362, FILED 7-28-2010.

LEIGH LOWRY, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL
> TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
> DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.
>
> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
> reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

EXHIBIT A7
- 39 -

# EXHIBIT A8

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,332,062**

**Registered May 7, 2013**

**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE, SUITE 201
CORONA, CA 92880

FOR: SILICONE WRIST BANDS; SILICONE BRACELETS; JEWELRY, NAMELY, BRACELETS AND WRISTBANDS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 12-0-2006; IN COMMERCE 12-0-2006.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,841, AND 3,134,842.

THE MARK CONSISTS OF A STYLIZED LETTER "M" TO THE LEFT OF THE STYLIZED WORDS "MONSTER ENERGY".

SER. NO. 85-747,244, FILED 10-5-2012.

REGINA DRUMMOND, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

EXHIBIT A8

- 40 -

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO.  The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# EXHIBIT A9

**Int. Cl.: 32**

**Prior U.S. Cls.: 45, 46 and 48**

**United States Patent and Trademark Office**

Reg. No. 3,134,841

Registered Aug. 29, 2006

## TRADEMARK
### PRINCIPAL REGISTER



HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
1010 RAILROAD STREET
CORONA, CA 92882

FOR: BEVERAGES, NAMELY, CARBONATED SOFT DRINKS, CARBONATED SOFT DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, CARBONATED AND NON-CARBONATED ENERGY AND SPORTS DRINKS, FRUIT JUICE DRINKS HAVING A JUICE CONTENT OF 50% OR LESS BY VOLUME THAT ARE SHELF STABLE, AND AERATED WATER, SODA WATER AND SELTZER WATER, BUT EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-246,567, FILED 5-7-2003.

AMY HELLA, EXAMINING ATTORNEY

EXHIBIT A9

# EXHIBIT A10

# United States of America

## United States Patent and Trademark Office



**M⍉N⌒TER**
E N E R G Y

**Reg. No. 3,908,600**  HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE SUITE 201
**Registered Jan. 18, 2011**  CORONA, CA 92880

**Int. Cl.: 16**  FOR: STICKERS; STICKER KITS COMPRISING STICKERS AND DECALS; DECALS, IN
CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

**TRADEMARK**  FIRST USE 1-0-2004; IN COMMERCE 1-0-2004.

**PRINCIPAL REGISTER**  OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE
MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND STYLIZED WORDS "MONSTER
ENERGY".

SN 77-705,747, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# EXHIBIT A11

# United States of America

## United States Patent and Trademark Office



**MONSTER**
E N E R G Y

**Reg. No. 3,908,601**
HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE SUITE 201
**Registered Jan. 18, 2011** CORONA, CA 92880

**Int. Cl.: 25**
FOR: CLOTHING, NAMELY, T-SHIRTS, HOODED SHIRTS AND HOODED SWEATSHIRTS, SWEAT SHIRTS, JACKETS, PANTS, BANDANAS, SWEAT BANDS AND GLOVES; HEADGEAR, NAMELY, HATS AND BEANIES , IN CLASS 25 (U.S. CLS. 22 AND 39).

**TRADEMARK**
FIRST USE 5-24-2002; IN COMMERCE 6-30-2002.

**PRINCIPAL REGISTER**
OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,822, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# EXHIBIT A12

# United States of America
## United States Patent and Trademark Office



**MONSTER**
ENERGY

**Reg. No. 3,914,828**
**Registered Feb. 1, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE, SUITE 201
CORONA, CA 92880

FOR: SPORTS HELMETS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-0-2006; IN COMMERCE 1-0-2006.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND THE STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,362, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

EXHIBIT A12
- 45 -

# EXHIBIT A13

# United States of America

## United States Patent and Trademark Office



**MONSTER**
E N E R G Y

**Reg. No. 3,923,683**

**Registered Feb. 22, 2011**

**Int. Cl.: 18**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: ALL PURPOSE SPORT BAGS; ALL-PURPOSE CARRYING BAGS; BACKPACKS; DUFFLE BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 5-0-2004; IN COMMERCE 5-0-2004.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND THE STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,810, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Audrey B. Collins_____ and the assigned Magistrate Judge is _____Douglas F. McCormick_____ .

The case number on all documents filed with the Court should read as follows:

## SACV14-00140  ABC (DFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 31, 2014_____
Date

By   Lori Wagers
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)               NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> _____ <br> *Plaintiff(s)* <br> v. <br><br> WEST COAST CHILL, INC., a Nevada corporation, and THE JOSEPH COMPANY INTERNATIONAL, INC., a California corporation, <br><br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.          **SACV14-00140 ABC (DFMx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> John B. Sganga, Jr.
> Lynda J. Zadra-Symes
> Lauren Keller Katzenellenbogen
> KNOBBE, MARTENS, OLSON & BEAR, LLP
> 2040 Main Street, 14th Floor
> Irvine, CA 92614

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____1-31-14____

*Signature of Clerk or Deputy Clerk*

**LORI WAGERS**

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                              *Server's signature*

                                                   _____
                                                              *Printed name and title*

                                                   _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation | WEST COAST CHILL, INC., a Nevada corporation, and THE JOSEPH COMPANY INTERNATIONAL, INC., a California corporation |

| **(b)** County of Residence of First Listed Plaintiff   Riverside | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| John B. Sganga, Jr.; Lynda J. Zadra-Symes; and Lauren Keller Katzenellenbogen KNOBBE, MARTENS, OLSON & BEAR, LLP 2040 Main Street, 14th Floor, Irvine, CA  92614; (949) 760-0404 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes  ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ To Be Determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. § 1114 (trademark infringement); 15 U.S.C. § 1125(a) (false designation of origin & trade dress infringement); 15 U.S.C. § 1125(c) (federal dilution); and 15 U.S.C. §1119 (cancellation of trademark)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☒ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:** | Case Number: | **SACV14-00140 ABC (DFMx)** |
|---|---|---|

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No | [ ] Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? <br><br> Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? <br><br> Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [X] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [X] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [X] | [ ] | [ ] | [ ] |

**C.1.  Is either of the following true?  If so, check the one that applies:**

[X] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right.  ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | SOUTHERN DIVISION |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

   If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

   If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   _[signature]_   DATE: _1/31/14_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |